# Applicability of the Compact Clause to Use of Multiple State Entities Under the Water Resources Planning Act

Agreements between the federal government and a state are not subject to congressional consent under the Compact Clause, U.S. Const. Art. I, § 10, cl. 3; nor are all agreements between or among states so subject, but only those which encroach upon or interfere with the authority of the federal government.

States may engage cooperatively in a broad range of planning activities under the Water Resources Planning Act without obtaining congressional consent, so long as they impose no legal obligation or disability on governmental or private parties.

Congress has given advance consent to planning activities of the statutory river basin commissions, but not to those of interagency committees or multiple state entities.

December 30, 1980

## MEMORANDUM OPINION FOR THE ACTING DIRECTOR, UNITED STATES WATER RESOURCES COUNCIL

This responds to your request for our opinion regarding the constitutionality, under the Compact Clause,* of using federal-state interagency committees or multiple state entities as sponsors for the preparation of Regional Water Resource Management Plans. For the reasons stated below, we conclude that there is a broad, although not unlimited, range of planning activity that can be undertaken without the consent of Congress. Consent is required only when two or more states agree among themselves to impose some legal obligation or disability on state or federal governments or private parties.

### I.

Pursuant to the Water Resources Planning Act, 42 U.S.C. § 1962, your agency coordinates and funds the development of comprehensive Regional Water Resource Management Plans (plans). The Act authorizes establishment of river basin commissions, comprised of members from state, interstate, federal, and international agencies. The Commission's enter funding contracts with your agency to act as plan sponsors. They develop the various plan elements, submit draft plans to a wide variety of interested parties for comment, and prepare final plans re-

---

*NOTE: The Compact Clause, U.S. Const. Art. I, § 10, cl. 3, provides that "[n]o State shall, without the consent of Congress . . . enter into any Agreement or Compact with another State, or with a foreign power. . . ." Ed.

flecting the comments received. They approve final plans on a consensus basis, *i.e.,* with all members either voting affirmatively or abstaining, and transmit approved plans to your agency and participating states. Your agency reviews the plans [1] and forwards them to the Office of Management and Budget, which reviews the plans and transmits them to Congress.

Existing plans are not legally binding on the participants or private parties. At the state level, a plan is implemented when individual states determine to follow its recommendations in budget and other matters. Our understanding is that states usually do abide by plan provisions, especially since they participate in plan development and exercise veto authority during the approval process, but that individual states do from time to time refuse to follow a given plan in some respects. At the federal level, implementation occurs by application of your agency's Consistency Policy, which requires the Army Corps of Engineers, the Department of Agriculture, and the Department of the Interior to inform the Office of Management and Budget of those particulars in which certain of their programs and projects are inconsistent with approved plans and to provide reasons satisfactory to the President for any inconsistency. [2] The strictures the Consistency Policy imposes on the federal government result from your agency's voluntary action.

To date, river basin commissions have been established for areas covering only about half of the Nation. You have sought to remedy this deficiency, in part, by contracting with agencies established by interstate compact. More recently, you have begun exploring the possibility of contracting with interagency committees or other multiple state entities to sponsor plans for regions of the United States not presently covered by commissions or compact agencies. Interagency committees are comprised of state and federal agencies; they help coordinate government programs but possess few, if any, other powers. [3] Other multiple state entities could assume a variety of forms. [4] Interested governmental agencies could take the leadership role. Alternatively, the states could coordinate their efforts, with either a state or federal agency joining together to establish an interstate nonprofit corporation along the lines of a council of governments.

---

[1] *See* Water Resources Council, Review of Regional Water Resource Management Plans (1980).

[2] *See* Water Resources Council, Policy Statement No. 4: The Utilization of Comprehensive Regional Water Resource Management Plans (1978).

[3] At least three interagency committees are presently operating: the Arkansas-White-Red Basins Interagency Committee, the Pacific Southwest Interagency Committee, and the Southeast Basins Interagency Committee. Water Resources Council, Improving the Planning and Management of the Nation's Water Resources 53-54 (1980).

[4] *See* Report to the Water Resources Council, Potential Interstate Institutional Entities for Water Resource Planning 12 (1980).

## II.

The comprehensive planning process can aptly be described as an exercise in "cooperative federalism." [5] Each step involves complex relationships between the federal government and the states and among the states *inter se.* In determining whether congressional consent is required under the Compact Clause, it is necessary to examine closely the nature and legal impact of the various agreements involved in the planning process.

We believe that agreements between the federal government and a state or states need not be submitted for congressional consent. The states, which possess all powers of government not withdrawn from them by the Constitution or delegated by the Constitution to the federal government,[6] are not barred by the Compact Clause from entering into individual or joint agreements with the United States. To the contrary, the Compact Clause, by prohibiting unconsented agreements with other states or with foreign powers, at least by negative implication contemplates that federal-state agreements need not be submitted for consent. The Framers may well have omitted federal-state agreements because they believed that in such cases the party negotiating on behalf of the United States could protect the federal interest.[7] It would also run counter to the fundamental constitutional principle of separation of powers to give either house of Congress the equivalent of a veto over agreements concluded by an executive branch agency. 43 Op. Att'y Gen. No. 25 (1980).** Because the Compact Clause is inapplicable to federal-state agreements, your agency need not obtain consent for its funding contracts with regional sponsors, or for any other obligations, such as the Consistency Policy, which might be included as express or implied terms of such contracts.

The planning process also involves agreements among the states *inter se.* Not all such agreements are subject to the Compact Clause, but only those "tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States." *Virginia* v. *Tennessee,* 148 U.S. 503, 519 (1893).[8] Interstate agreements interfere with federal power in this sense if: (1) they involve a subject matter which the Congress is competent to regulate, *see*

---

[5] *Cf.* Grad, *Federal-State Compact: A New Experiment in Cooperative Federalism.* 63 Colum. L. Rev. 825 (1963).

[6] U.S. Const. Amend. X.

[7] The records of the Constitutional Convention furnish no light on the meaning or purposes of the Compact Clause. For discussions of the historical meaning of the Clause's terms, *see generally* Frankfurter & Landis, *The Compact Clause of the Constitution: A Study of Interstate Adjustments,* 34 Yale L.J. 685 (1925); Comment, *What Did the Framers of the Federal Constitution Mean by "Agreements or Compacts?",* 3 U. Chi. L. Rev. 453 (1936).

**Note: The cited Attorney General's opinion is reprinted in this volume at p. 30 *supra.* Ed.

[8] *Accord. United States Steel Corp.* v. *Multistate Tax Commission.* 434 U.S. 452, 467–71 (1978); *New Hampshire* v. *Maine.* 426 U.S. 363, 369 (1976); *Stearns* v. *Minnesota.* 179 U.S. 223. 246 (1900); *Louisiana* v. *Texas,* 176 U.S. 1, 17 (1900); *Wharton* v. *Wise.* 153 U.S. 155, 169–171 (1894).

*Wharton* v. *Wise,* 153 U.S. 155, 171 (1894); and (2) they purport to impose some legal obligation or disability, *see United States Steel Corp.* v. *Multistate Tax Commission,* 434 U.S. 452, 467–71 (1978).

These principles permit the states to engage in a broad range of planning activities without obtaining congressional consent. Although water resources planning is undoubtedly within congressional power under the Commerce Clause, *see Kaiser Aetna* v. *United States,* 444 U.S. 164, 173 (1979); *United States* v. *Appalachian Electric Power Co.,* 311 U.S. 377, 426–27 (1940), many aspects of the planning process do not impose a legal detriment on state or federal governments or private parties. The states may agree, without congressional consent, to create, fund, and participate in a regional sponsor empowered to prepare and adopt a plan, so long as each state is free to accept or reject a plan or any of its provisions and has the unfettered power to withdraw from the regional sponsor. *See United States Steel Corp.* v. *Multistate Tax Commission,* 434 U.S. at 473–78. Furthermore, nothing prevents the states, acting independently, from adopting a plan as legally binding within their own territories. The test is whether the state action is truly independent or whether it is made instead in return for reciprocal action by other states. Congressional consent would be required, however, for any plan calling for joint construction or operation of any facility. Similarly, consent would be required if the regional sponsor possessed any legally effective authority, regulatory or otherwise, to ensure the plan's implementation by state or federal governments or private parties.

The Weeks Act, 16 U.S.C. § 552, grants advance congressional consent to interstate compacts, not in conflict with federal law, whose purpose is "conserving the forests and the water supply of the States entering into such agreement or compact." Although broad in scope, the Weeks Act does not amount to a congressional abandonment of its duty to review all interstate compacts.[9] Congress may delegate its lawmaking authority so long as it provides some articulated standard to guide agency action. By analogy, so long as it defines the category with some specificity, Congress should be able to determine that a given type of interstate compact poses so little threat to federal interests that advance categorical consent may be granted. The Weeks Act consents to the preparation and implementation of a forests and water supply element as an initial stage of the comprehensive planning process. But it does not consent to broader plans designed for other purposes, such as regulating navigation, controlling floods, conserving fish and wildlife, abating water pollution, and enhancing water-related recreation.[10]

---

[9] *But see* Muys, *Interstate Compacts and Regional Water Resources Planning and Management,* 6 Natural Resources Lawyer 153, 174 (1973).

[10] *See* Water Resources Council, Improving the Planning and Management of the Nation's Water Resources 30 (1980).

The Water Resources Planning Act, we believe, grants advance congressional consent to plans drawn up by river basin commissions, since in authorizing creation of these agencies Congress was careful to protect federal interests.[11] But the Act does not similarly protect federal interests when plans are sponsored by interagency committees or multiple state entities.[12] Indeed, the Act nowhere specifically mentions the possibility of such agencies acting as plan sponsors.[13] Although it appears that federal participants in some of these agencies might adequately protect federal interests in a given case, it is highly doubtful that Congress consented in advance to all agreements made by regional sponsors, other than river basin commissions, in which the federal interests happen to be represented "adequately."

## III.

Much can be accomplished without congressional consent. A multiple state entity or an interagency committee may be formed, funded, and authorized to sponsor a plan, so long as participating states retain unfettered discretion to withdraw from the arrangement. The regional sponsor may promulgate a plan, so long as it is merely advisory in nature and there is nothing to stop individual states from independently adopting the plan as legally binding within their territories. A forest and water conservation element could be prepared that imposes legal strictures on the affected states or private parties. The federal government may choose to impose strictures on itself. Indeed, there is no legal obstacle to the development of plans which would require congressional consent when implemented. All that is required is that consent to such plans be obtained at some time before they become effective in ways which impair or threaten to impair a federal interest.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[11] Title II of the Act, 42 U.S.C. § 1962b, creates a detailed scheme for allocating state and federal power within a river basin commission. River basin commissions are established by the President, at the request of a state or your agency, but only with the concurrence of at least one-half of the affected states. § 201(a). The chairman of a river basin commission is a federal representative chosen by the President, § 202(a), while the vice chairman is chosen by the states. § 203(b). The members include representatives from states, federal departments or agencies, compact agencies, and international commissions. § 202(b)–(c). River basin commissions operate on a consensus basis, thus giving both federal and state representatives veto power over agency action. § 203(d). Finally, with respect to plans prepared by river basin commissions, the Act sets forth a detailed procedure for comment by affected parties, review by your agency, and transmittal to the President and the Congress. § 204(3).

[12] With respect to compact commissions, the original congressional consent to the interstate compact should extend to the comprehensive planning process so long as the original compact granted the compact commission power to engage in this type of planning.

[13] You have not asked us to examine the statutory bases for your agency's authority to designate bodies other than river basin commissions as regional sponsors, or for its power to subject plans prepared by these bodies to the review procedures ordinarily given river basin commission plans.